PATRICK LOWREY *vs.* THE MAYOR AND BOARD OF ALDERMEN OF CENTRAL FALLS.

PROVIDENCE—JULY 27, 1901.

PRESENT : Stiness, C. J., Tillinghast and Blodgett, JJ.

(1) *Statutes. General and Special Provisions.*

Clause 2, section 4, of the charter of the city of Central Falls, passed February 21, 1895, was not repealed by the general provisions of Gen. Laws cap. 40, § 34, passed February 1, 1896.

(2)  *Police Constables.   Tenure of Office.   Power of Removal.*

Under the provisions of clause 2, section 4, of the charter of the city of Central Falls, a member of the paid police department cannot be removed from office except upon the preferring of charges and the hearing provided for in the act.   Hence the mere failure of the board of aldermen to re-elect a member of the paid police department does not, *ipso facto*, vacate his appointment.

BLODGETT, J.   The petitioner prays for a writ of *mandamus* against the mayor and aldermen of the city of Central Falls, commanding his re-instatement as a member of the paid police department of that city.

It is conceded that on and prior to February 4, 1901, the petitioner was a duly-qualified police constable of the city of Central Falls and a member of the paid police department of said city, as appears by the following certificate :

"CITY CLERK'S OFFICE,

"CENTRAL FALLS, R. I., January. 10th, 1900.

"I hereby certify that Patrick Lowrey was duly elected police constable for said city until the month of January, 1901, next, or until his successor shall be duly elected and qualified.

"Attest :         C. FRED CRAWFORD, City Clerk."

That on said date the respondent mayor nominated and the respondent aldermen confirmed sixteen police constables for that city, and that Lowrey was not one of the number ; that the police ordinance of the city fixes the number of paid members of the department at sixteen, and that no charges of any kind have ever been preferred against the petitioner, nor has any vote of the aldermen ever been adopted which in terms removed him from office as a police constable or as a member of the paid police department.   The contention of the respondents is, in substance, that the failure to re-elect the petitioner as a police constable *ipso facto* vacated his appointment as a member of the paid police department, and the petitioner denies this contention.

The question turns upon the construction to be given to

clause 2, section 4, of the charter of Central Falls, enacted by the General Assembly February 21, 1895, which is as follows :

"CLAUSE 2. The aldermen may appoint, upon the nomination of the mayor, so many and such police constables, including the chief of police, as the ordinances of the city council may determine, which said officers shall hold their respective offices during the pleasure of the board of aldermen, except as hereinafter provided, and the mayor may at any time suspend any such officer from his office until the adjournment of the next meeting of the board of aldermen, at which meeting he shall report any and all such suspensions, with his reasons therefor : *Provided, however,* that the members of the paid police department of said city shall not be subject to removal from office at any time except for misconduct or incapacity of such a character as the board of aldermen may deem a disqualification for said office, and all such removals shall be by the board of aldermen, upon charges made in writing and of which the officer complained of shall have had notice and opportunity to be heard thereon."

By the express language of this clause all the police constables elected under the provisions of this section are to hold office "during the pleasure of the board of aldermen," and not for any other term. It follows that the aldermen may at any time at their pleasure remove such a police constable (subject to the proviso presently to be considered), but that a police constable once elected and qualified thereunder holds his office until so removed. His tenure of office is not the same as is provided by section 34 of chapter 40, General Laws, viz. : "The town councils of the several towns may elect such number of police constables for their respective towns as they may deem expedient, who shall not be required to give bond, nor shall they be authorized to serve process in civil actions, but in all other matters they shall have the same power and authority as other constables ; and they shall continue in office during the pleasure of the town council and no longer. *Provided,* that they shall not remain in

office by virtue of the election by the town council for more than ten days after the expiration of the political year for which such town council was elected."

It will be noticed that the section last cited fixes the term of office of police constables elected thereunder at "the pleasure of the town council and no longer," with a proviso that no such constable can remain in office "for more than ten days after the expiration of the political year for which such town council was elected;" but the clause of the city charter now under consideration contains no such proviso and no such restriction upon the term of office, and consequently not only permits the aldermen to remove a police constable at pleasure within the first year of his election, but also continues him in office indefinitely and until such removal, subject always to the power of suspension conferred upon the mayor.

Again, the aldermen can elect only so many police constables "as the ordinance of the city council shall determine," while town councils in general are authorized under the section above cited to elect "such number as they may deem expedient."

Chapter 40, section 34, General Laws, went into effect on February 1, 1896, being a re-enactment of chapter 38, section 30, Public Statutes, in force when the charter of Central Falls was enacted. We are of the opinion that the special proviso contained in the charter was not repealed by the general provisions of chapter 40, section 34, General Laws. In *Tripp* v. *Torrey*, 17 R. I. p. 360, Matteson, C. J., said: "It is a well established rule of construction that special statutes are not repealed by general provisions unless the legislative intent to repeal be clear," and see cases cited.

(2) Passing now to a consideration of the remaining provisions of the clause in question, it clearly appears that the power of removal, which is conferred in general terms as to all police constables, is restricted and strictly limited as to the members of the paid police department by the proviso above referred to. So that whenever a police constable is appointed a member of the paid police department the proviso becomes operative, a

far greater degree of stability is given to his tenure of office, and he cannot be removed from the office without the preferring of charges and the hearing provided for in the act. The reason for this difference is not far to seek, for it is difficult to conceive of a state of affairs which would more tend to the entire subversion of the efficiency of the police department of a city than an annual campaign for re-election, as it is also most clearly evident that the highest degree of efficiency in the department can be attained by a provision which makes merit the sole ground of retention in office and duly guards the interests of the public by providing for dismissal from office for cause.

Counsel for the respondent urges upon our consideration the provisions of section 8 of the charter, as follows :

"All officers under this act, unless otherwise provided by law, and all officers chosen or appointed by virtue of any ordinance under the same, shall hold office during the current municipal year for which they may be elected or appointed, and until their successors are chosen or appointed and qualified in their stead ; and all vacancies shall be filled for the remainder of the term."

But if we could agree with him that the words "unless otherwise provided by law" do not apply to the police constables elected thereunder, we nevertheless cannot escape the force of the words extending the term for which such officers are elected, as follows : "and until their successors are chosen and appointed and qualified in their stead ;" and as the petitioner was not the only one who failed of re-appointment as a police constable, it is not contended that any person has been chosen as his successor.

It appears by the undisputed testimony that the petitioner reported for duty on February 4, 1901, as usual, and was notified by the chief of police that he was no longer a member of the police department, and that he duly reported for duty on February 5th, 6th, and 7th, and finally was informed by the chief, as Lowrey testifies, "that it was not necessary —no need of my coming there any longer. Q. He had got

orders not to let you serve?   A.  Yes sir "—and that upon the order of the chief he surrendered his insignia of office.

We are of the opinion that the petitioner did all that he was bound to do to preserve his rights, and that it would be unreasonable to require him to go through the idle ceremony of a daily offer of his services in view of the instructions he has received from his superior officer.

The petitioner is entitled to the relief for which he prays, and the writ may issue accordingly.

*Hugh J. Carroll,* for petitioner.
*John N. Butman,* for respondents.